## Case No. 6,030.

### The HANNAH M. JOHNSON.

[Blatchf. Pr. Cas. 97.] [1]

District Court, S. D. New York. Jan., 1862.

PRIZE—ENEMY PROPERTY—TRANSFER TO CREDITORS.

1. Enemy property, shipped by an enemy, from an enemy port, to his creditor, to be applied on a debt, but which, before it came to the creditor's hands, was captured at sea, continues to be enemy property.

2. The transfer to the creditor cannot be carried into effect after the intervention of the legal rights of the captors.

Hearing on further proofs. [The original proceeding upon the libel is given in Case No. 6,029a.]

BETTS, District Judge. The decision in the above cause. on the hearing upon the pleadings and the proofs in preparatorio. concludes, after condemnation of the cargo, with costs, as being enemy property, with the provisions following: "Leave, however, being given to the respective claimants thereof to produce further proofs that the cargo, when shipped, belonged to neutral or loyal owners; such further proofs are to be furnished at the cost of the claimants, and are to be given within ten days from the entry of this decree, unless further time be allowed therefor by the court, or by stipulation of the libellants."

On the 8th of January instant, the counsel submitted further proofs taken upon their mutual attendance before a commissioner of the United States courts, with their respective arguments to the court thereon. This attempt to protect the cargo was, however, limited to the claim of ninety-nine hides in behalf of Leopold Lithauer, to which some further proofs were produced and addressed, and nominally, also, to the claim interposed in behalf of C. C. & H. Faber, of New York. to sixty bales of cotton. That claim was not upheld before the court after the further proofs were introduced, but I understand. from extraneous suggestion, that it was the understanding of counsel, that the court should consider and pass upon the further proofs in this respect also, as part of the matter submitted for the judgment of the court. The hides were shipped by Weiner. in his own name, and continued to be his property to the time of capture. They never came to the hands of Lithauer by actual or

symbolical delivery from the New Orleans owner. They were designed, no doubt, in the process of negotiation and arrangement between Weiner and Lithauer, to be remitted by the former, and were expected to be accepted by the latter, in credit upon an open account in their mutual dealings, but had never, in the transition, so changed hands as to become the property of Lithauer, or to operate as an acquittance to their value of the liabilities of Weiner to him. They remained, in point of law, the property of the New Orleans merchant, and must have continued so, without his consent had been procured to indorse the bill of lading to Lithauer, or otherwise transfer the merchandise to him. It was, no doubt, a mental understanding and purpose with Weiner that the goods should go to Lithauer, but that design, if existing, failed of being carried into effect, and, by the rules of prize law, could not be done after the intervention of the legal rights of the captors. Wheat. Capt. Mar. 85, § 16; The Abo, 1 Spinks Pr. Cas. 46. Accordingly, the hides left New Orleans in the ownership of a trader resident there for many years, and after the war between that state and the United States was set on foot, and when seized was enemy property. The master of the vessel had alone intervened and claimed the hides in the character of owner and carrier; but he shows no proof of any right of property in hides in himself. It accordingly follows that the exportation of them from New Orleans was by the shipper for his own interest.

The claimants, Faber & Co., in the testimony given on the further proofs, prove that, in June last, they received the sixty bales of cotton shipped in the Hannah M. Johnson, as consignees and cotton-brokers. No bill of lading accompanied the shipment. The master's manifest, attested at New Orleans the 14th of May last, and his freight list of the same date, represent the cotton as shipped at New Orleans by F. M. Fish. It was remitted, through the agency of Jacob Barker, for Mr. Fish, who was at the time a resident also of New Orleans. The order to deliver the goods to Barker was made on the drayman's receipts of the cotton on board the vessel before she sailed from New Orleans, May 14, and Fish's letter addressed to Barker in New Orleans, May 22, shows that Fish still continued to act as owner of the goods, and directed their consignment in New York to Faber & Co. Mr. Barker consequently, on the 23d of July, by letter of that date to New York to Faber & Co., recognizes Fish's ownership of the cotton, and directs them to deliver it, or the avails of it, to Hendrickson, of Rhode Island. Mr. Barker never made any advances to Fish upon the assignment of the cotton to him, and Fish continued to act as the sole owner of it until the time it, or its avails, went to Hendrickson, which was not until July last. Mr. Fish still continues a resident of New Orleans. The further proofs introduced by these parties have no way varied the case as it stood upon the original evidence, and the decision before pronounced must now be made final in respect to those portions of the cargo also. Judgment accordingly.

[An application for freight money for the confiscated cargo was denied in Case No. 6,031.]